# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:06cv88

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| NORTHWESTERN HOUSING ENTERPRISES, INC.; EDWARD G. FOWLER; JONATHAN D. PRESNELL and ELIZABETH P. PRESNELL; DONALD W. BARTON and LAURIE A. CIMINO; JASON E. JARRELL and SHIRON L. JARRELL; MARK M. ILLICH and BRANDY ILLICH; JOHN C. WATSON and JILL M. WATSON; SARA V. COOK; MICHAEL D. FORRESTER and AMY L. FORRESTER; WALTER D. ANDERSON and JENNIFER L. ANDERSON and ELIZABETH A. MURRAY; DARREN R. FAULKNER and JAMIE L. FAULKNER; and CHRISTOPHER H. ELLER, | ) MEMORANDUM OF DECISION |
| | ) |
| Defendants, and | ) |
| | ) |
| NORTHWESTERN HOUSING ENTERPRISES, INC., EDWARD G. FOWLER, | ) |
| | ) |
| Defendants and Third-Party Plaintiffs, | ) |
| | ) |
| Vs. | ) |
| | ) |
| ST. PAUL TRAVELERS; and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) |
| | ) |
| Third-Party Defendants. | ) |

**THIS MATTER** is before the court in accordance with 28, United States

Code, Section 636(c), and on third-party defendants St. Paul Travelers' and St. Paul Fire and Marine Insurance Company's (hereinafter "Travelers") Motion for Summary Judgment and plaintiff Auto-Owners Insurance Company's (hereinafter "Auto-Owners") Motion for Summary Judgment. Having considered Travelers' and Auto-Owners' respective motions, the responses, the replies, and the exhibits of the respective parties, as well as having conducted a non-evidentiary hearing on March 3, 2008, the court enters the following findings, conclusion, and decision.

**FINDINGS AND CONCLUSIONS**

**I.     Procedural History**

In the Complaint in this action, plaintiff Auto-Owners brings a declaratory judgment action against defendants Northwestern Housing Enterprises, Inc., and Edward G. Fowler (hereinafter "defendants Enterprises and Fowler"), the insureds under policies issued by Auto Owners for the period covering October 27, 1999 through October 27, 2004. Also named as defendants in this action are the plaintiffs in the underlying lawsuit in state court ("the Watauga action"), who will be referred to herein, collectively, as the "Presnell litigants." The Presnell litigants have not responded to any of the dispositive motions, which the court finds to be both proper and appropriate.

Defendants Enterprises and Fowler included in their Answer a Counterclaim which seeks a declaratory judgment against Auto-Owners, and a Third-Party Complaint against the Travelers. In the Third-Party Complaint, which is plead in the alternative to the Counterclaim, see Fed.R.Civ.P. 8(d)(2), Enterprises and Fowler

claim that there is coverage under the applicable policy or policies issued by Travelers to them for the time period from October 27, 1997, to October 27, 1999.

Auto Owners and Travelers have moved for summary judgment, each contending that there is no indemnity coverage for the claims the Presnell litigants have asserted against Enterprises and Fowler in the Watauga action.[1] In their response, Enterprises and Fowler contend that Auto Owners owes a duty to defend and a duty to indemnify them for any judgment that may be rendered against them, and, alternatively that Travelers owes a duty to defend and a duty to indemnify Enterprises and Fowler for any judgment that may be rendered against them. It is Enterprises' and Fowler's contention that summary judgment should be denied to their insurance companies and that judgment should, instead, be granted in favor of the insureds.

## II. Factual Setting

### A. The Homes and the Storm

All parties agree that there are no genuine issues of *material* fact and that this action should be resolved as a matter of law. Inasmuch as defendants Enterprises and Fowler are, in the strict sense, the parties resisting summary judgment, the court has drawn heavily from their portrayal of the undisputed facts.

On September 8, 2004, the remnants of Hurricane Francis hit the mountains of North Carolina, bringing with it torrential rains. Located along a hillside near the

---

[1] As discussed below, Auto-Owners does not seek summary judgment as to the personal property claims or personal injury claims of the Presnell litigants.

-3-

Town of Boone were 10 homes, all owned by the Presnell litigants. While these homes were all decades old, they had recently been relocated from a flood plain to another tract of land, a slope, as part of an municipal affordable housing project.

On September 8, 2004, however, all of the homes owned by the Presnell litigants were either destroyed or substantially diminished in value when the earth beneath the homes moved, slid, and otherwise gave way during the torrential rains. Expert testimony elicited in the underlying action indicates that the hillside gave way due to an improperly designed slope, improper compaction of fill, and fill of uncertain integrity, Deposition of Neil Gilbert, at 4-6 (Plaintiff's Ex. 32), all of which occurred and was completed well before the rain event.

While the homes were owned and sold by defendants Enterprises and Fowler, the general contractor on the project was Northwestern Regional Housing Authority (hereinafter "Authority"), which has not been made a party to this action. It is undisputed that all work performed in the development of this tract and the renovation of these homes was either done or subcontracted out by the Authority.

**B.  Introduction to The Policies of Insurance**

**1.  Travelers' Policy: 1997-1999**

Travelers issued to Enterprises as the named insured certain policies of insurance under policy number IM03201613, with an inception date of October 27, 1997 and continuing (by renewal) through October 27, 1999. Travelers' policy provided for general liability coverage and for "Owners or Contractors Liability Protection" coverage (hereinafter "OCP") for both bodily injury and property damage

that occurred during the policy periods. The total liability coverage limits in the Travelers' policy are $2,000,000.00, with a limit of $1,000,000.00 for each event.

### 2. Auto-Owners Policy: 1999-2004

In turn, Auto Owners issued to Enterprises, as the named insured, certain policies of insurance under policy number 994615-35074376-03, for the time period commencing on October 27, 1999, and continuing (by renewals) until October 27, 2004. Defendant Fowler is also an insured pursuant to the definition of insured under the policies, which provide that the executive officers and directors are insureds with respect to their duties.

These policies included coverage for Commercial General Liability (hereinafter "CGL") with a general aggregate limit of $2,000,000.00, for products-completed operations coverage in the amount of $2,000,000.00, and a per occurrence limit of $1,000,000.00.

## III. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one

party must prevail as a matter of law." Id., at 252.

## IV. Applicable North Carolina Law

### A. North Carolina's Comparison Test

In determining whether alleged circumstances are covered by the provisions of an insurance policy under North Carolina law such that they give rise to a duty to defend, North Carolina courts as well as federal courts sitting with diversity jurisdiction follow the "comparison test." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 693 (1986). In the comparison test, "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Id.

If the pleadings "state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Id., at 691. On the other hand, if the pleadings "allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." Id.

### B. Rules of Construction for Contracts of Insurance

The meaning and interpretation of language used in an insurance policy is a question of law. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354 (1970). In Gaston County Dyeing Machine Co. v. Northfield Ins. Co., 351 N.C. 293, 299 (2000), the North Carolina Supreme Court unequivocally set forth the rules governing the construction of insurance contracts as follows:

> As with all contracts, the goal of construction is to arrive at the intent of
> the parties when the policy was issued. Where a policy defines a term,

> that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

Id., at 299-300.

### C. Shifting Burdens

The insured bear the initial burden of establishing that a loss comes within the scope of a policy's coverage. Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326, 328 (1966). Once the insured satisfies its initial burden, the burden then shifts to the insurer to prove that an exclusion contained within the contract of insurance precludes coverage for such a loss. Fortune Ins. Co. v. Owens, 351 N.C. 424, 430 (2000).

## V. Allegations of the Watauga Complaint

In order to determine whether the policies provides any coverage for the claims in the Watauga Complaint, the court has first looked to the language of the Complaint to determine the nature of the harm the Presnell litigants allegedly suffered. The Watauga Complaint provides in relevant part as follows:

> 2. On September 8, 2004. several homes and properties within White Laurel, including the homes and properties of Plaintiffs, were damaged during heavy rains as a result of defects in the design, construction and development of the homes and properties within White Laurel. As a result of

> the defects, one property was completely destroyed, five (5) properties were condemned, and several other sustained multiple damages.
>
> * * *
>
> 37. As a result of the deficient, design construction and development of the properties within White Laurel by Defendants as described above, many homes and properties, including the homes and properties of all Plaintiffs, suffered damages to their building lots foundations, homes, and personal property in late September 2004 following heavy rains in the White Laurel community.
>
> * * *
>
> 46. As described above, due to the deficient and inadequate design, construction and development of the properties within White Laurel by Defendants, Plaintiffs suffered damages to their building lots, foundations, homes, and personal property when heavy rains occurred in September 2004.
>
> * * *
>
> 50. As a result of the deficient and inadequate design, construction and development of their property by Defendants, the Presnells' home was completely destroyed in the heavy rains on September 8, 2004. The Presnells were inside of their home as the heavy rains occurred and as their home slid off its foundation, down the slope, and was destroyed.
>
> * * *
>
> 52. As a result of the events described herein, Elizabeth Presnell has been diagnosed with Post Traumatic Stress Disorder for which she has sought and received professional treatment.

Defendant's Ex. 1, Ex. A, Watauga Complaint.

**VI. The Trigger of Coverage is the Date of the Defective Work**

In this case, there is a dispute of law between the parties as to when the claim arose. The concept of "multiple causes," while applicable in tort claims, has no application to determination of liability insurance coverage. A trigger of coverage raises a threshold issue of whether the insured can bring the event within the policy

–9–

language.  In this case, wile there is no doubt that the defects were made manifest when the earth moved and the foundations failed on September 8, 2004, it is beyond dispute that the Presnell litigants contend in their Complaint that the damage was due to the "deficient and inadequate design, construction and development of the properties." Watauga Complaint, at ¶ 46.  Thus, this is a faulty workmanship case, and as a matter of law in such a case, the damage must exist from the time the faulty work is performed.

In <u>Hutchinson v. Nationwide Mut. Fire Ins. Co.</u>, 163 N.C.App. 601 (2004), which involved a retaining wall that failed due to design and construction defects which allowed water to enter the soil surrounding the wall, the North Carolina Court of Appeals held, as follows:

> . . . Brulen's failure to install a drainage system in the retaining wall or to use proper soil under the retaining wall occurred before 15 November 1999 and therefore Brulen's later insurance policy is not triggered if the damage was caused under those theories.

<u>Id.</u>, at 605.  In <u>Nelson v. Hartford Underwriters Ins. Co.</u>, 177 N.C.App 595 (2006), the court noted that "[i]nstead of examining when the harm manifested, 'we look to the <u>cause</u> of the property damage rather than to the effect." <u>Id.</u>, at 606.  The fact that the foundations and lots gave way during a rain event in 2004, while tragic, is immaterial.

In a corollary argument made at the hearing, defendants Enterprises and Fowler posited that regardless of when the damage occurred one of the two policies *must* provide coverage.  They argued that for the court to hold otherwise would render meaningless policies secured by innumerable owners and builders of construction

projects. While this argument appeals to one's sense of fair play, it would require a leap of logic inasmuch as the whole cannot exceed the sum of its parts. For example, such an argument would be akin to the executor of an estate arguing that the deceased must have been covered by a life insurance policy inasmuch as he had purchased both dental and health insurance. In this case, such defendants purchased very discrete policies of insurance, none of which provided coverage for faulty workmanship. As discussed below, there simply is no insurance coverage for faulty construction workmanship available under these policies or any commercial policies of which this court has knowledge. Instead, the cautious builder (and buyer) would purchase a home warranty or seek a performance bond. See Travelers Indem. Co. v. Miller Bldg. Corp., 97 Fed. Appx. 431 (4th Cir. May 20, 2004) (unpublished decision),

**VII. Travelers' Motion for Summary Judgment**

**A. Pertinent Language of the Policy of Insurance**

The policy issued by Travelers insures against liability for covered property damage and bodily injury that: "(1) results from work done for you; (2) happens while the agreement is in effect; and (3) is caused by an event." Fowler 30(b)(6) Deposition; Defendants' Exhibits 2 and 3. The policy also excludes coverage for damage to the property owned by the insured during the period of coverage.

**B. Discussion**

As discussed above, it is undisputed that the Travelers policy was in effect between October 27, 1997 and October 27, 1999. The language of the Watauga Complaint clearly indicates that the tragic events of September 8, 2004, revealed the

Achilles heal of defendants' project. It is equally clear from the language of the Watauga Complaint that they are asserting a faulty workmanship claim inasmuch as their damages <u>resulted</u> from <u>defects</u> that may well have occurred during the policy period. The Presnell litigants allege that as a result of "the deficient and inadequate design, construction and development of the properties . . . Plaintiffs suffered damages . . . ." Watauga Complaint, at ¶ 46.

Faulty workmanship, design, construction, and development of the properties is not an "event" or contingency which is covered by the Travelers' policy. The policy issued by Travelers was an OCP, which protected defendants Enterprises and Fowler as owners from third-party liability for bodily injury or property damage to others while the work was in progress. A side-by-side comparison of the Watauga Complaint and the insuring language makes clear that there is no insurance coverage afforded under the Travelers' policy for these claims. The policy specifically provides that

> **Control of property. We won't cover property damage to:**
> * **Property you own, rent, lease, occupy or borrow,**
> * **Personal property in your care, custody or control.**
> * **Work done for you.**

Inasmuch as defendants Enterprises and Fowler owned the property when the defective work was done, there simply is no coverage. The court will grant third-party defendants' Motion for Summary Judgment and dismiss with prejudice the Third-Party Complaint seeking declaratory relief against them.

### C. Conclusion

The "Owners or Contractors Liability Protection" policy or "OCP" policy

issued by the Travelers does not provide insurance coverage for work done for the defendant/third-party plaintiffs upon property they owned. As a result, the court will grant summary judgment for the third-party defendant, and will enter a judgment dismissing the third-party Complaint with prejudice.

**VIII. Auto-Owners' Motion for Summary Judgment**

    **A.    The Auto-Owners' Policy**

For purposes of brevity, the court hereby incorporates its previous discussion of the Watauga Complaint. Unlike the OCP issued by Travelers, the policy issued by Auto-Owners is a CGL policy. Auto-Owners does not contest coverage and a duty to defend as a result of the personal injury and personal property damage claims of the Presnell litigants.

In moving for summary judgment, Auto-Owners contends that it is entitled to declaratory relief as a matter of law from liability on the Presnell litigants claims for damage to their real property. The policy provides in relevant part that:

> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies….
> 
>     \* \* \*
> 
> b.     This insurance applies to "bodily injury" and "property damage" only if:
> 
>     \* \* \*
> 
> (2)     The "bodily injury" and "property damage" occurs during the policy period.

The policy goes on to define property damage as

> a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.     Loss of use of tangible property that is not physically injured. All

such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**B.     Discussion**

As a matter of prevailing North Carolina and federal case law on the subject, the Presnell litigants' claims stated in the Watauga Complaint simply do not fall under the language of the policy. To amount to a defensible claim for damages under the policy, the Presnell litigants were required to allege that at some point the property was undamaged, and that an injury based on an occurrence attributable to the defendants Enterprises and Fowler was inflicted upon previously undamaged property and at a time when the propery was not owned by the insured. As the Watauga Complaint makes clear, the Presnell litigants contend that the damages were made manifest on September 8, 2004, but were caused by Enterprises' and Fowlers' faulty construction of the homes.

In Wm. C. Vick Constr. Co. v. Penn Nat'l Mut. Cas. Ins. Co., 52 F.Supp. 2d 569 (E.D.N.C. 1999), affirmed *per curiam*, 213 F.3d 634 (4th Cir. 2000), addressing a nearly identical policy of insurance, the district court found that

> These [policy definition] requirements, in this court's opinion, infer that the property allegedly damaged has to have been undamaged or uninjured at some previous point in time. This is inconsistent with allegations that the subject property was never constructed properly in the first place.

Id., at 582. The same result was reached in Prod. Sys., Inc. v. Amerisure Ins. Co., 167 N.C. App. 601 (2004). The claims in the Watauga Complaint make clear that the underlying dispute does not involve damage to previously undamaged property, but damage due to faulty construction *ab initio*.

In <u>Travelers Indem. Co. v. Miller Bldg. Corp.</u>, <u>supra</u>, the Court of Appeals for the Fourth Circuit noted that "liability insurance is not a substitute for a performance bond." <u>Id.</u>, at 434. To the extent that a corporation sought to hold the insured liable for the cost of correcting the insured's own faulty workmanship, those claims did not fall within the scope of the CGL policy at issue in the case, "because faulty workmanship does not constitute 'property damage.'" <u>Id.</u>, at 434.

Faulty workmanship also is not an "occurrence" under a general liability policy. In <u>Wm. C. Vick Constr. Co.</u>, <u>supra</u>, the issue of whether a claim arising from faulty workmanship is caused by an "occurrence" under a general liability policy was addressed by the court:

> In sum, although there is no North Carolina authority on point, given the North Carolina Supreme Court's interpretation of the term "accident" in *Tayloe*, this Court concludes that an insured's poor workmanship does not fall within the meaning of that term, and thus does not constitute an "occurrence."

<u>Id.</u>, at 586. In <u>Tayloe v. Indem. Co.</u>, 257 N.C. 626 (1962), the North Carolina Supreme Court defined an "accident" in an insurance policy as an

> unforeseen event, occurring without will or design of a person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or the cause being known, an unprecedented consequence of it; a casualty.

<u>Id.</u>, at 627, 127 S.E.2d at 239-40 (citation omitted). In its application of <u>Tayloe</u>, the court in <u>Vick</u> held:

> The natural and ordinary consequences of improperly applying a waterproofing membrane…could very well be a leaky membrane and cracked walls.

<u>Wm. C. Vick Constr. Co.</u>, <u>supra</u>, at 584. In this case, the natural and ordinary

-15-

consequences of "deficient and inadequate design, construction and development of the properties" that relates to fill, compaction, and slope design is failure of the foundations and erosion of the lots. Thus, the claims of the Presnell litigants have not been brought within the language of the policy.

Even if the initial burden had been satisfied and coverage was available under the terms of the Auto-Owners policy, Auto-Owners still would have no liability on the claims at issue under the "Property Owned By the Insured" exclusion. In Shelter Mut. Ins. Co. v. Brown, ___ F.Supp.2d___, 2004 WL 2651249 (S.D. Miss. June 21, 2004),[2] the district court held, as follows:

> . . . even if the allegations of the underlying complaint satisfied the definition of "property damage" caused by an "occurrence," the policy excludes coverage for property damage to property owned by the insured.
>
> * * *
>
> Learned treatises in the field of insurance explain that " '[o]wned property' exclusions assure that the policy covers only liability to third parties, as it is intended to do, and that it excludes coverage for risks that the insured may be in the best position to prevent." See Ostrager and Newman, Handbook on Insurance Coverage Disputes § 10.03[b] at 441 (8th ed.1995), cited in *King County v. Travelers Insurance Company*, 1996 WL 257135, (W.D.Wash.); and *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (N.J.1979) (explaining that the function of business risk exclusions in liability policies is to restrict and shape the coverage afforded). Clearly, the "owned property" personal liability exclusion in the instant case is designed to protect the insured from liability for injuries to third parties, not damage to the insured own property.

Id., 2004 WL, at 5. The "Property Owned By the Insured" exclusion would preclude

---

[2] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

a duty on the part of the insurer to defend.

### C. Conclusion

The Auto-Owners policies do not provide coverage for damage to the homes or lots of the Presnell litigants because the "property damage," if any, happened at the time of the completion of the faulty work, which was while Enterprises still owned the property. As stated above, the Supreme Court of North Carolina has held that "where the date of the injury-in fact can be known with certainty, the insurance policy or policies on the risk on that date are triggered." Gaston County Dyeing Machine Co., supra, at 303.

In the Watauga Complaint, the Presnell litigants allege damages to their homes caused by the improper design, construction, and development. Specifically, the Presnell litigants allege that defects in the soil fill materials and grading and foundation work caused the damages alleged. It is undisputed that this allegedly faulty construction work was performed during the time that Enterprises retained ownership of the homes. As stated in Hutchinson, supra, "if the court can determine when the defect occurred from which all subsequent damages flow, the court must use the date of the defect and trigger the coverage applicable on that date." Hutchinson, at 605, 594 S.E.2d at 64. The damages alleged by the Presnell litigants all flow from the alleged faulty site preparation work performed on behalf of the Insureds. Because this work was performed while Enterprises owned the lots and homes of the Presnell litigants, the "owned property" exclusion of the Auto-Owners' policies excludes coverage.

For the foregoing reasons, the court will grant summary judgment declaring that Auto-Owners has no duty to indemnify Enterprises and Fowler for damage to the Presnell Litigants' homes or lots as alleged and asserted in the Watauga County action. Such determination does not, however, reach the defenses and potentially assumed by Auto-Owners as to any claims for damages to personal property or for personal injury.

* * *

Having carefully considered all the arguments, briefs, exhibits, and pleadings, the court will grant both motions for summary judgment, dismiss the counterclaim with prejudice, and enter a declaratory judgment in favor of plaintiff and against defendants Enterprises and Fowler. A judgment consistent with this Memorandum of Decision is being entered simultaneously herewith.

Signed: March 31, 2008

_____
Dennis L. Howell
United States Magistrate Judge